We'll move to our last case of the day, which is Richmond v. Badia, if I'm pronouncing that correctly. And feel free to get settled. No hurry. We have Mr. Haynes here for the appellant. Mr. Jean-Baptiste here for the appellee. No hurry, but whenever you're ready. John, may my client appear at the desk or should he stay there? I think it's probably best that she just stay in the front or that they stay in the front row, if that's okay. Yes. Thank you, Your Honor. There's this old, goofy tradition, and I don't know whether I should respect it or not, but that this fence that separates you from us is called the bar. And people on this side of that bar are lawyers. Are members of the bar. Are lawyers or judges, yes. So, as goofy as that may sound, just to respect protocol, I suppose I'll keep the line in place. Yes, I'm saying, Your Honor. I should say, however, if you anticipate assistance from them, then it would be fine with me if I sat with you at the counsel table. No, that's fine. Okay, you good? Okay, very well. May it please the Court. Your Honor, Attorney Carlos Haynes, on behalf of Mr. Richmond. Today, I'm going to ask this Court to do something that has been being asked for a while. And something that was brought back to me while I was in that room. I'm asking this Court to give the 14th Amendment its teeth that it originally had, barring any exceptions. Barring any officer acting in good faith. To give it that strict reading and strict liability that both it and 42 U.S.C. 1983 has. Now, to do that, you don't need to actually rewrite this judicially made exception of qualified immunity. I'm asking you to apply, send to the District Courts clear direction on when not to apply qualified immunity. So you're not asking, just so I understand your argument, you're not asking us, which frankly I think we wouldn't be empowered to do as a three-judge panel, to say qualified immunity is not a thing. Yes, I'm not asking you to do that. Gotcha. Well, what I am asking, again, the whole 1983 was brought about as a due process protection. And the 14th Amendment is due process protection. Well, in this particular case, Mr. Padilla had four to five instances where due process said he acted wrongly. He was terminated. Civil review hearing upheld that. Prosecutor brought charges. He himself admitted to wrongdoing by entering a plea. A state court judge found a factual basis. He's had five steps at the due process that's supposed to protect young Mr. Trellis. He's had that, but yet and still qualified immunity has us here. Now, outside of the fact that the court wrongfully applied qualified immunity in this case, and I say that because the facts clearly do not support what is in the order. First, the court, as well as counsel, totally ignored the fact that the law is clearly established that when you exert force as a punishment, there is no qualified immunity. We presented the Bostic case squarely on point, maybe on six legs on a four-legged table, where it was in a school setting, a dispute between a teacher and a student occurred. In that case, the officer actually witnessed it. In this case, the officer didn't. Somebody told him that the young man may have battered his mom. But yet and still, in depositions, the officer said, well, I was there to teach that person a lesson. I was there to teach them to respect authority. Well, this court, on appeal, said, well, that's not your purpose, and you cannot have qualified immunity in a case where the force that you exerted was done so not for a lawful arrest, but for some other personal reason or for some reason such as teaching someone a lesson. Can I ask you a quick question about the Bostic case, which I think points up what is, to me, most difficult about this case? On the one hand, the facts in this case in Bostic, I agree with you, are not too dissimilar from one another. So, you know, if you think about this case, if you think about the two cases, the factual similarity between the two, you're like, yeah, pretty close. The difficulty is, and for me anyway, with respect to the doctrine of clearly established law, that Bostic wasn't an excessive force case, right? Bostic was, it was like a different body of doctrine that the court was tapping into. I don't think that Bostic even cited Graham versus Conner, which is like the, you know, like the Marbury versus Madison of excessive force cases, right? So are we supposed to take these cases for purposes of qualified immunity as factually similar or as legally similar? Well, actually, I believe both. You start with the facts. In this case, again, they're squarely on point. But even in barring from opposing counsel, in order to evade, in order to have qualified immunity applied in excessive force, there has to be an actual arrest. Every case that they cited, it dealt with an actual arrest. There was no arrest in this case. The officer clearly says, I'm not even there to do an arrest. Well, you can't say, well, if he would have arrested him, then the force would have been justified. We also take a position against the court finding that it was what they call de minimis force. When you look at the fact that this young man, 13 years old, was pinned down for over three minutes. As I pointed out in my brief, that's one third of the time that George Floyd was pinned down. And he's one third of the age. That is clearly excessive, especially when he's not resisting. You all have seen the video. He's just there. He's pinning him down. He's cursing him. He's lecturing him. That is not what our school resource officers should do. I gave some empirical data, but it's 57% of the time that these appellate courts on excessive force are finding qualified immunity. Because they're saying, oh, well, it's not really clearly established because it doesn't fit the facts 100%. It doesn't have to fit the facts 100%. We know we send our kids to school to be protected and not harmed. We know that 42 U.S.C. 1983 was devised to protect young Mr. Trellis. Over time, these exceptions have come to vitiate that. And I'll just be quite frank. That same sort of judicial exceptions is why Plessy stood all the way to Brown versus the board on this same 14th Amendment. This young man was not afforded due process. This officer came in and decided he's going to punish him and teach him a lesson because, as he said, he wasn't looking at me when I was talking to him. There's no scenario in which I believe that a court, any court, should find that justified. Not to the point that we're saying it should have been erased due to CODLA. But the reasonableness standard that 1983 has come to embody, are we saying that his employer wasn't reasonable? Are we saying that the prosecutor wasn't reasonable? Are we saying that he wasn't reasonable himself when he said, I'm going to enter this plea of no contest and give away my law enforcement license? If all of those safeguards showed reasonableness, how can that court find, oh, well, he acted reasonably or it wasn't clearly established that what he was doing violated the law? Can I ask you another just doctrinal question? You might be right about this, and I'm sort of embarrassed to admit that I don't know the answer to this. But so is it right that the Fourth Amendment provides no protection against excessive force outside the context of an arrest? So if you're being, I don't know, Terry stopped or something, you have no right against excessive force? There's no such thing as an excessively forceful Terry stop? Not excessively. You can bring a Fourth Amendment claim for the officer's use of force in any sort of encounter with that officer, whether it's a Terry stop, whether, as they cite, there was a case dealing with the execution of a warrant. In that execution of a warrant case, though, the appellate court said, well, the reasonableness has already been decided by a neutral magistrate who said that these people can be detained while certain things happen. In this school setting or in any other setting where you have an encounter with an officer, if they pretend to be engaged in a legal duty, acting under the code of law, if they engage in activity that batters you. And again, that de minimis requirement comes only in cases when they are effectuating an arrest. If we're outside of de minimis, the officer doesn't have a right to grab me. He doesn't have a right, if I'm walking and he wants to do a consensual encounter and say, hey, Mr. Haynes, can I talk to you? And I'm saying, no, that's OK, and grab me? That's a violation of the 14th Amendment and 42 U.S.C. 1983. And that's, again, what we have here, that Mr. Richmond was just there. He had a bad haircut. His mom had given him a bad haircut as a punishment. They got into a dispute about the hoodie. I can only hope for a bad haircut. Me too, y'all. I give myself a bad haircut twice a week. And as most 13-year-olds, he was concerned about that. And that's what led to the disagreement between him and his mom. But it's not an officer's job to teach a child a lesson. And let me ask you a question that follows up on Judge Newsom's questions. So the way I read Bostick is the holding in Bostick is that police officers in schools – actually, we said that it's obviously clear that police officers in schools cannot use force for the purposes of punishing students. Yes. And if that's the holding in Bostick, that holding is going to apply whether the claim is brought for excessive force or for unreasonable seizure or for whatever because the holding is that it's obviously clear that police officers can't use force to punish students in schools. Yes. And I would agree. And if you look at the line of cases that I cited versus those that opposing counsel cited, I believe there's a little curvature of the line when you're dealing with adults, that the courts have given a little more leeway for some of that de minimis force. But every case that deals with a school setting, they don't apply de minimis force in that context because you're dealing with a person that's of a de minimis age. You're dealing with a person that's of a de minimis mentality versus that of an adult. I challenge counsel to find a case dealing with a school setting with any facts close to this where a young man was tossed around, pinned down, when he wasn't resisting. It's one thing if he was involved in a fight and the officer came to break up that fight. Then the force used to secure that would be deemed reasonable. But when you're not effectuating any arrest, it doesn't meet arguable probable cause. It doesn't meet probable cause. There was no type of arrest to be made in that scenario where he clearly indicated my intent was to teach him a lesson. He was disrespecting me. He claims he didn't slap him, but he just grabbed him on the face. However it was, we believe the tape was sufficient for it to be sent to a jury. We believe the procedures that happened below show the reasonableness or the unreasonableness of his actions. I see my time. The Honor has expired. Before you leave, hang on one sec. Judge Branch, do you have questions? Yes, I do. If we determine that the officer had probable cause to arrest your client, even though he did not, in fact, arrest your client, do you lose? Yeah, well, if you find that there was probable cause to arrest my client, it would definitely make my argument very difficult. But I would ask the court not to find that based upon this court's own precedent. He didn't know it was the case. Wait, wait, wait. Hold on one second. I want you to assume that we determined that the officer had probable cause to arrest. So where do we go from there with your argument if we make that determination? All right, Your Honor. If you found that there was probable cause, you still have to determine if the force used in effectuating a non-arrest. Because whether there was probable cause to arrest does nothing to the fact that the officer was not making an arrest. And even in making an arrest, he must use reasonable force. This young man was not resisting. At a minimum, a jury should be able to look at the tape and make a determination, was this force used to possibly arrest somebody that you wasn't intending to arrest, was that reasonable? And so while I said it would make it more difficult, it still should be an issue that a jury would determine based upon the evidence that was presented below. And while the two sides differ, normally this court sides with letting the jury view the tape and make that determination. But you would agree that it is relevant whether or not the officer had probable cause to arrest, even if the officer did not end up arresting your client, right? No, I would not agree that that is relevant. And the best thing I can say is sort of like the tipsy coachman doctrine that you all or appellate courts apply. If it's not raised below, you can't apply tipsy coachman. And if this officer was not going to make an arrest, he clearly enunciated that because that brings us back into Boston. Yes, the officer viewed some things that they could have possibly arrested the plaintiff for. But when they make it clear that they are not making an arrest, it would be to stack a few emphases upon emphases in order to justify his actions. That's all I have. Can I ask you one more? So one of the, you know, we've got this multiplicity of factors that we look to in excessive force cases, some under Graham v. Conner, some in the cases that have followed from Graham v. Conner. But one of them is the degree of injury. What exactly is the injury that your client alleged here? Well, he alleged some psychological injuries, but yet just the physical injury, the pin down for those three minutes. Evidence that actually from his deposition, you can see that he wasn't even in his mom's custody, that his mom had just regained custody because he was a child of abuse. And so having to revisit a officer, a person of authority, exerting that sort of force on this young man at a young tender age, there is a, we believe, a degree of force that shows excessiveness, again, simply because he wouldn't look at him while the officer was talking to him. So I guess the reason I ask is that I think it's the complaint, forgive me if this is wrong, but I think it's the complaint that refers to this as physical inconvenience. And I was just trying to figure out what that meant exactly. Just having this freedom totally restricted. Not wrestling an older brother used to do that to me when I was little, and you just, you can't get up. There's nothing you can do, and it causes anxiety. It just brings a level of frustration that you shouldn't have to underscore in school because you wouldn't look at your resource officer. Gotcha. Okay, good. So we've taken you over your time. I apologize. No, no, no, it's our fault, not yours. You have all of your rebuttal time available to you. Thank you, Your Honor. Thanks so much. All right, so Mr. Jean-Baptiste, let's hear from you. May it please the Court, Counsel, my name is Louis Baptiste. I represent the appellee in this matter, Mr. Padilla. During my arguments, I'm going to refer to him as Officer Padilla because at that time he was a law enforcement officer and were undergoing a qualified immunity analysis in his capacity as an officer. But for the record, he is no longer an officer. We're asking the Court to affirm the grant of summary judgment issued by the District Court in this matter. One, because it's clear that on May 8, 2015, Officer Padilla was acting in a discretionary capacity. He was at the school as a resource officer. He was not in the front office. He received a call from a third party regarding a battery on his mother. Before Officer Padilla got there, he confirmed that this was not a school matter because Officer Padilla, as a law enforcement officer, was not supposed to be involved in school matters. Ms. Rivera, as the record is clear, affirmed that she saw Mr. Richmond, the appellate, push his mother. On the way to the front office, that, in and of itself, is enough for probable cause and to fort a law. Here's the problem I have with the probable cause argument, I'll just tell you. If the officer had shown up and said, Mr. Richmond, you're under arrest, and tried to arrest him, and he resisted, then I could understand the purpose for the use of force. But in your client's deposition, he said, that's not why I used force. I used force against Richmond because he was out of control and needed to be brought under control. And when I watch the video, I see a 13-year-old standing there that's not out of control at all until a police officer punches him in the face, or at least grabs his face. What is the purpose, in your view, what was the purpose, if there is one, for using the force? It was a lawful detention, Your Honor, and the law was clear on that. Mr. Padilla was there to investigate a corruption. Saying it's a lawful detention, I mean, you think the purpose was to detain the 13-year-old? Yeah, to investigate a crime, that he had a duty and an order to investigate. Did the officer give an instruction to the 13-year-old not to leave, that he then violated? No, he told him to look at me, which he had the right to do. So an officer, so if I'm standing, I mean, I'm just trying to figure out what you're saying. So if I'm walking down the street, I don't know, let's just say I've committed a crime, and I'm standing there in the police station, and the officer says, he's yelling at me or talking to me, and I just, I'm looking not at the officer, then the officer, as part of detaining me, can grab my face, throw me on the ground, twist my arm, and then when I stand up, push me. That's all part of the detention? No, Your Honor, but I think with that analysis that the court has just made ignores, is what the district court judge found, is that when Mr. Officer Padilla reached for Mr. Richmond, the appellee's face, the video clearly shows that Mr. Richmond slapped Padilla's hand away. The law in Florida is clear that you cannot resist a lawful arrest with violence. It's clear. You're allowed. That's where I just, I don't understand because your client said that he didn't use force to effectuate an arrest. So that's why I'm, I mean, had he said in his deposition, this whole thing started when I tried to arrest Richmond, and then he resisted, that's not what he said. He said that he was doing all of this to control somebody who was causing a disturbance. I mean, I don't know. I just, is there, I guess, here's the question maybe. Is there any evidence in the record at all that the officer was trying to effectuate an arrest from either the officer's testimony or from anything that you view on the video that the officer was using force to effectuate an arrest? Your Honor, there's better than something. There's better than testimony. There's a police report that was entered. Officer Medea completed a arrest report in this case and processed the arrest report. I'm sorry, a police report? That's a hearsay? I don't understand. What did the officer testify in his deposition that he used force? I mean, did he testify in his deposition that he used force to effectuate an arrest? His testimony in his deposition was that he used force to effectuate a lawful detention to investigate whether or not to make an arrest. Where is that? Where is that in the record? I don't have a citation to it, Your Honor. My guess is that's not in the record, but that's fine. Yeah, Your Honor, it's in the record. I don't have a citation. But during his deposition, he testified to that. But the district court's analysis was that, one, the burden is not on Officer Medea, which is what the appellate seems to attempt to do here. The law is clear that once Officer Medea establishes that he was operating in a discretionary capacity, which we did clearly, that the burden shifts to the appellate to show that Officer Medea violated clearly established law and that absent that clearly established law, as set forth by the court in Priester. In Priester, the court says that unless a controlling and materially similar case declares their official's conduct unconstitutional, a defendant is usually entitled to qualified immunity. So can I ask you a question just to circle back to the same question that I asked Mr. Haynes? The thing about this case that makes it hard to me is that if I'm trying to slot this case into some existing legal doctrinal silo, so that if what I'm looking for is an excessive force case, a Graham v. Connor case that's on all fours, not sure I can find it. If what instead I'm looking for is a case that's pretty doggone factually similar and whose bottom line holding is that police officers operating in schools can't use force for the purpose of teaching a student a lesson, then Bostic seems pretty close. So which of those two things is it? I think it's the latter, not the former, in that clearly established law requires exactly that, that the law be clearly established as to the actual count being brought, which is, I think, what the Eleventh Circuit has held for longer than my lifetime. Here in this case, the clearly established law would have been that a force was excessive, right? And Bostic doesn't do that. And I think there's factual dissimilarities between Bostic and the case sub judice, and that is that, one, in Bostic, the girl was placed in handcuffs. In this case, in this court, has 10 years of precedent that distinguishes the analysis between force versus cuffed person and a non-cuffed person. And so to me, because of that, Bostic is inapplicable. But there the cuffing was—I mean, I get it that Bostic wasn't a force case necessarily, but to the extent we're going to sort of graft force onto Bostic, the cuffing was the force, right? So there there was cuffing. Here there was the arm bar and the takedown, right? Yes, Your Honor. But I think after—we have to note that the arm bar and the takedown doesn't happen until Mr. Richmond slaps Mr. Padilla hands down, and that can't be ignored because that, again, is resisting an officer with violence, which the district court noted in footnote 3 that Officer Padilla made arguments at the lower level that in addition to probable cause to arrest him for battery, he had probable cause under Florida law to arrest him for resisting without violence. What do we do with the fact that your client was prosecuted and convicted of assault? I mean, he pled guilty to assault. He wasn't convicted in front of a jury, but, I mean, he's effectively conceded he had no justification for using force by pleading guilty to assault. No, Your Honor. Respectfully—I apologize if you want to finish. No, go ahead. Go for it. Yeah, Your Honor, I apologize. But that plea is immaterial legally. There's not a single case that the appellant could cite to that would support that that plea somehow inhibits the court's grant of qualified immunity. Oh, yeah, sure. He's not going to be able to cite to one because no court has ever granted qualified immunity in a situation where the police officer was convicted of using force criminally against the person who then sued the police officer. I mean, this is—as far as I'm aware, this has never happened. So, but what as a legal matter—I mean, if the officer has previously been convicted and pled guilty to unlawful use of force, how can we say that he has qualified immunity for that use of force? It's a different analysis, Your Honor. I think because at the lower level— Yeah, it seems like it's harder to convict someone of committing an assault. Proof beyond reasonable doubt is necessary for that than it would be in a civil case. Your Honor, I disagree because at the criminal case, qualified immunity isn't an affirmative defense in a criminal matter. And so if he could raise qualified immunity as an affirmative defense in a criminal matter, then Officer Medea might have not taken the plea, and the case would be entirely different, which is why I think the appellant's analysis isn't correct in that you can't mix the two. But in the criminal matter—and this is my last question about the criminal matter. So in the criminal matter, the government has the burden to prove intent and lack of justification in the assault case. So he has better than a qualified immunity defense. It's actually the government's burden to prove that he lacked justification for the harmful touching. Yeah, Your Honor, I understand that. But where I disagree is that although the government has the burden, the government doesn't have to show the clearly established law. That doesn't exist in a criminal context. That's an entirely subset of body of law that has been adopted. And that's what creates—that's where this case has to turn on. And that goes back to Judge Newsom's question, is that even if you look at Bostick, this court can set precedent now that Bostick should be used in that excessive force. So Bostick says—Bostick actually cites no precedent and says it's obviously clear that police officers in schools cannot use force for the purposes of punishment or for no purpose whatsoever. I guess I would ask you, is it obviously clear that police officers cannot use force for no reason whatsoever? Yes, and I would answer— And I think that's right. I think that's the only possible answer. So then the question is just, on the record here, you say that the officer used force for a reason, to effectuate an arrest, and your opposing counsel says the officer used force for punishment or for no reason whatsoever, right? Yes, Your Honor, but I don't just say use it to effectuate an arrest. Use it for a lawful detention. Detention, detention. It goes back to Judge Newsom's question to the appellant, which was, and also Judge Zabranch's question, which was, does it matter that he wasn't arrested—that he didn't actually arrest Mr. Richmond if there was probable cause? And I think I answered the question in the negative. It doesn't matter, and there's no case that the appellant could cite to. And understanding that qualified immunity exists to protect Officer Padilla from exactly that question. That's why it exists, to protect him from the, I'll use the appellant's words, woulda, shoulda, coulda analysis, which is how he describes the district court's analysis in their initial brief. But here, the district court correctly noted that a reasonable officer under the same circumstances would have arrested or could have arrested Mr. Richmond for battery. After that initial battery, the fact that on the video it's clearly shown that Mr. Richmond slaps Officer Padilla's hand away, it's important to note, which appellant ignores, that that happens prior to any tape down. And it's important to note that in 2018, this court approved the same exact maneuver down to the decimal and horn that Officer Padilla did, which clearly establishes that the force was necessary. Let me ask you a quick question just about the video, which I'll confess I think is troubling. So by the time that the officer gets there, the appellant is hoody-less, right? Sitting, calm. It seems to me in watching the video that the officer is the one who sort of instigates this entire encounter. Do you think that's a fair viewing of the video? No, Your Honor, I don't because I haven't watched the video a hundred times. The officer, Mr. Richmond, was standing to the left of the desk at the tape. He was not sitting, he was standing to the left of the desk. At that time, Mr. Richmond approaches him, Officer Padilla approaches him and begins to ask him questions. Doesn't he kind of wag his finger at him? Doesn't he kind of get up in his face and kind of wag his finger at him? He is close to him. He is close to him, Your Honor, but none of those, that's not excessive force, nor is that a false arrest claim. And so, insofar as I understand the video not being comfortable, that's immaterial to the court's analysis here of excessive force under Graham v. Conner factors or false arrest. I mean, it's immaterial. And so, understanding my time is wrapping up, one, to address the false arrest claim, he had arguable probable cause. And so he could not commit false arrest. I mean, there's no cases that would suggest that he can. And it's appellant's duty to cite to a case, not Officer Padilla's duties to raise one. It's the appellant's duty. And they can't meet that duty. And that's what clearly established law. That's why it's there, to protect him. And so this court has to affirm the district's court grant of summary judgment on the false arrest count. Then that leaves us… The counsel was never arrested, so, I mean, you know, I don't disagree with you there. It seems like he was never arrested, truly or falsely. But on the excessive force issue, the plaintiff gives me a cite. This is what plaintiff says in his brief. Padilla admits that he did not intend to arrest Mr. Richmond when he touched him. And he cites Doc 73-3, paragraph, page 3, paragraph 6. Do you disagree? Do you say that Padilla did not admit that? That instead Padilla said that he did intend to arrest him or that he was using force for the purposes of arrest? I disagree. Having been at the deposition myself, the record's not in front of me, but I'm almost 100 percent sure that's a partial cite. And it's not cite. And if the court were to look at it, that full page, and I were to brief it and have the chance to look at the deposition, it would show that Padilla's complete sentence, having been there at the deposition myself, was that he was, that entire time, was to take Richmond into lawful detention so that he could investigate whether or not to arrest him. And Padilla explained and expounded that the reason for doing that was because the school, the state attorney's office, had a policy that they did not want custodial. And that's what the court seems, and that's what the appellant is ignoring, is that you can have a noncustodial arrest. And the excessive force analysis under Granby-Connor would still apply. Similarly, you can also have a noncustodial arrest where you take somebody into custody and then let them go, which is permissible under Florida law, and issue them a citation. And that would still, under that analysis, the Granby-Connor analysis would still apply, which is what appellant ignores. There's no requirement that you take them into custody and put them back in the back of the police car and take them to the jail in a paddy wagon for the Granby-Connor analysis to apply. I completely agree with you on that. I guess the point is, and my inquiry is, did the officer have any reason whatsoever to use force? And based on the record, at least as it was represented to me, the officer said, I use force because I just use force. I use force because I got there, I was yelling at the kid, the kid didn't want to look at me, so I started grabbing the kid. That, to me, doesn't seem like a justification for using force. And it seems to me like that is the justification that we said was obviously not a justification in our previous case on Bostic. So you're saying, though, that I'm going to find in the record somewhere where the officer said, no, the reason I use force is because I was going to effectuate a detention of this kid, and the kid resisted the detention, and so that's why I used force. Yes, and pursuant to it, and to clarify that, he was doing that to investigate the matter further, which is what he was going to do, which is what he was doing to Mr. Richmond at the time, was asking him questions when this all happened, is that he was asking him questions. The last point I'd like to make is that in their brief, they cite to Cheney v. Albury for the proposition, and Cheney being a middle district case, for the proposition that the district court erred in granting summary judgment because Officer Badilla failed to inform Mr. Richmond that he was placing him under arrest, and the reasons that he could not arrest him lawfully under Florida Statute 901. I'd just like to state that that case has not been adopted by the Florida Supreme Court, by this court, nor by the United States Supreme Court, so that case cannot, as a matter of law, refer to clearly established law, and so that entire argument is non-material to the analysis that this court has to go today. Officer Badilla was in a police report, was completed, an arrest report was completed. It was the policy of that state attorney that at that school, unless it was a felony level offense, and this is in the lower record, this is in the deposition if the court goes back and review it, that they would detain the person if necessary. In this instance, he determined it to be necessary, complete an arrest report, and that arrest report would be forwarded to the state attorney's office so that they could review it to determine whether or not that person should be charged. That's exactly what Badilla did in this case, and clearly established law and qualified immunity exists to protect him for instances just like this. Bostick is distinguishable, and Bostick is not clearly established law for excessive force, and so because it's, again, the clearest obvious doctrine, the district court correctly noted, this case does not fall under the clearly obvious doctrine. One, he committed a battery. This isn't a case where he didn't commit a battery, and so Badilla didn't come to the front office thinking that he was dealing with some lawfully compliant kid who was just having a discussion with his mother. That's not what happened. Badilla had two confirmations prior to coming to that front office that a battery had been committed, and so he's walking to that front office to investigate a battery, not to investigate a kid who's tardy to school. Lastly, the appellate makes a lot of arguments about Badilla's state of mind or Badilla's prejudice, but the district court correctly noted that the Eleventh Circuit precedent clearly establishes that Badilla's state of mind or Badilla's prejudice are irrelevant to the qualified immunity analysis. That's on point, Eleventh Circuit precedent, and we think all those arguments for that purpose are improper. Thank you so much. Okay, very well. Thank you so much. Mr. Haynes, you've got a little bit of time in rebuttal. Thank you. I don't plan on going four minutes over. I would like to first address the issue that he was making a lawful arrest. That could have, should have, would have clearly, that I argue, deals with the fact that the law is clear that when you are actually effectuating an arrest, that an officer is given certain leeway. It's implied that he's making the arrest in good faith. It's implied that there will be some de minimis for us, but we don't have an arrest. So to go into that line of thinking isn't applicable because we don't have an arrest. Next, he says the law isn't clearly established, but the statute is clear. 901-17 says when making an arrest, the officer must convey to the person the purpose of the arrest. It never happened because he never intended to make an arrest. More problematic, I believe, is their position that he could have arrested him for resisting officer. Florida Supreme Court made it clear back in 1982, and this court has followed it, that you have to be in the lawful execution of a legal duty. What lawful execution of a legal duty was he doing when he reached and grabbed this young man in his face? The two actions that Mr. Richmond did are all reactions. When he said he battered his mom, well, his mom reached over, snatched the thing off his head. So, yes, he pushed her back. Then the officer came, grabbed him, slapped him, did whatever he did to his face, so he pushed his hand. Everything this young man did was reactionary. To say that he was investigating a battery makes a mockery of an investigation. The victim is there. Nowhere in the record would you find that he went and asked the victim, did your son batter you? There's video. At no point did he go and say, let me see the tape of what happened before I go talk to this young man. That's an investigation. And we know that this circuit has established that officers don't get a pass to say that I have probable cause based upon what somebody told them when they don't engage in a diligent investigation. No investigation was done as to a battery because no battery had taken place. The issue of him entering a plea, counsel forgot that standing ground is way more powerful than qualified immunity in the state of Florida. That if, indeed, my client had done something to him first, then he doesn't have to enter a plea to an assault charge because my client would have initiated the physical force. The record is clear that that did not happen. It is clear that he admitted that he was the one that did the physical wrongdoing. While I understand what qualified immunity was trying to accomplish, there's some facts that I included in my brief and there's just a few more that we've probably seen recently. The FBI has talked about certain groups getting into law enforcement. If this qualified immunity keeps giving these, finding these small slithers to say, that's not 100% on point, it's about 85, so we're not going to find them liable. Then the real person that the statute was supposed to protect is the person that's harmed, the person whose due process rights are being taken, the person who's experiencing the physical force, the arrest without probable cause, the excessive force. Those protections are now being lost and the numbers are, the 2015 FBI report said that we are reaching epidemic levels of white supremacy infiltration into law enforcement. We're at a pandemic. Epidemic is right below that. This is a time that this court can say, I'm not going to change qualified immunity even though we need to talk about it, but we know when we see it and this isn't it. When we see a person being punished in a school setting, 13, we can't lose the sight of that. That's not the appropriate time to exert force, even if you were going to detain him. You don't have to grab him in his face. He wasn't walking anywhere. He just wasn't looking at him. Thank you, Your Honor. Thank you both very much. Well argued on both sides. Oh, Judge Branch, I'm so sorry. Do you have questions, follow-up questions? No. Okay. Very well. Sorry for that. Thank you both. Well done, both sides. The case is submitted and the court is in recess. All rise.